IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| KENNETH YORK,<br><br>            Plaintiff,<br><br>vs.<br><br>TIMOTHY DUNNING, SHERIFF OF DOUGLAS COUNTY, NEBRASKA, et al.,<br><br>            Defendants. | 8:16-CV-175<br><br>MEMORANDUM AND ORDER |

    The plaintiff in this case, Kenneth York, is bringing several claims against Douglas County, Nebraska, arising out of his allegedly unlawful arrest and detention on April 29, 2015. The County has moved to dismiss his claims. The Court will grant the County's motion, but will afford York leave to replead his complaint.

## I. BACKGROUND

    The events giving rise to this case began in the County Court for Douglas County in August 2003, when York was sued on a financial obligation. Filing 5-1 at 75-78.[1] A default judgment was entered in March 2004. Filing 5-1 at 68. At the creditor's request, the county court entered an order in aid of execution on July 20, 2005, commanding York to appear on August 22 to give testimony under oath. Filing 5-1 at 17. York did not appear, and on September 8, the county court issued a capias warrant to the Douglas County Sheriff. Filing 5-1 at 10-11. But, the same day, a suggestion of bankruptcy was filed advising the county court that York had filed a bankruptcy petition. Filing 5-1 at 8-9. Accordingly, the county court terminated the pending garnishment proceedings, stayed the case pursuant to 11 U.S.C. § 362, and cancelled the capias. Filing 5-1 at 5-9. The capias was

---

[1] The County has submitted the county court records in support of its motion to dismiss. *See* filing 5. When deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court is normally limited to considering the facts alleged in the complaint, and if the Court considers matters outside the pleadings, the motion to dismiss must be converted to one for summary judgment. Fed. R. Civ. P. 12(d). But the Court may take judicial notice of state court records without converting the motion to dismiss to one for summary judgment. *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007). The Court takes such notice here.

received by the sheriff on September 9, but was "returned with No Further Action Taken, per the instruction" of the county court judge. Filing 5-1 at 1.

Fast-forward to 2015: York alleges that he was sitting in his lawfully parked car near 96th Street and Park Drive in Ralston, Nebraska, when he was approached by two unnamed sheriff's deputies, who checked his identification then arrested him on the basis of the 2005 warrant. Filing 1-1 at 2. He spent the night in jail. Filing 1-1 at 2. He sued the County, the County sheriff, the two unnamed arresting deputies, and an unnamed agent of the County "who negligently filed a fraudulent or mistaken warrant" (collectively, the County),² in state district court, asserting several state-law claims and two federal Constitutional claims. Filing 1-1. The County removed the case to federal court based on the federal questions presented. Filing 1. The County now moves to dismiss York's claims. Filing 3.

## II. STANDARD OF REVIEW

A complaint must set forth a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This standard does not require detailed factual allegations, but it demands more than an unadorned accusation. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint need not contain detailed factual allegations, but must provide more than labels and conclusions; and a formulaic recitation of the elements of a cause of action will not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). For the purposes of a motion to dismiss a court must take all of the factual allegations in the complaint as true, but is not bound to accept as true a legal conclusion couched as a factual allegation. *Id.*

And to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must also contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Iqbal,* 556 U.S. at 678. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has

---

² The sheriff and the Doe defendants are expressly named in their official capacities only. Filing 1-1 at 2. But a suit against a public servant in his "official capacity" is a suit against the municipality itself, not the individual. *See Brandon v. Holt,* 469 U.S. 464, 472-73 (1985). So, the only meaningful defendant is the County.

The County contends that the official-capacity defendants "should be dismissed as redundant of Plaintiff's claims against Douglas County." Filing 4 at 6. The Court declines to do so. There is some benefit to expressly describing the County employees whose conduct is at issue, and the County has not identified any way in which it is prejudiced.

- 2 -

alleged—but it has not shown—that the pleader is entitled to relief. *Id.* at 679.

Determining whether a complaint states a plausible claim for relief will require the reviewing court to draw on its judicial experience and common sense. *Id.* The facts alleged must raise a reasonable expectation that discovery will reveal evidence to substantiate the necessary elements of the plaintiff's claim. *See Twombly*, 550 U.S. at 545. The court must assume the truth of the plaintiff's factual allegations, and a well-pleaded complaint may proceed, even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely. *Id.* at 556.

### III. DISCUSSION

York's complaint asserts eight claims for relief: (1) trespass upon solitude, (2) false light invasion of privacy, (3) malicious prosecution, (4) abuse of process, (5) false imprisonment, (6) negligence, (7) Due Process, and (8) the Fourth Amendment. But for reasons that will become apparent, it will be helpful to group York's claims into two main categories: his six state-law claims, and his two federal Constitutional claims.

#### 1. STATE LAW CLAIMS

York's first six claims for relief are state-law tort claims. For some, there is a question whether the facts alleged are plausible or consistent with state law. But the primary question for each of these claims is whether they may be brought against the County pursuant to the Nebraska Political Subdivisions Tort Claims Act (PSTCA), Neb. Rev. Stat. § 13-901 *et seq*.

The PSTCA provides in relevant part that it does not apply to "[a]ny claim arising out of assault, battery, false arrest, false imprisonment, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." Neb. Rev. Stat. § 13-910(7). The exceptions set forth in § 13–910 are affirmative sovereign immunity defenses to claims brought pursuant to the PSTCA. *Harris v. Omaha Hous. Auth.*, 698 N.W.2d 58, 65 (Neb. 2005). "In other words, if a political subdivision proves that a plaintiff's claim comes within an exception pursuant to § 13–910, then the claim fails based on sovereign immunity, and the political subdivision is not liable." *Harris*, 698 N.W.2d at 65. And an action may "arise out of" one of these enumerated intentional torts even if it is styled as something else. *See Britton v. City of Crawford*, 803 N.W.2d 508, 517 (Neb. 2011); *see also Johnson v. State*, 700 N.W.2d 620, 624 (Neb. 2005).

(a) Malicious Prosecution, Abuse of Process, and False Imprisonment

York's malicious prosecution, abuse of process, and false imprisonment claims are easily disposed of, because they fall within, and are barred by, the plain language of § 13-910(7). York does not oppose dismissal of those claims. Filing 7 at 2. In addition, the malicious prosecution claim rests on the allegation that an unnamed County employee "caused a false warrant to be issued." Filing 1-1 at 5. The abuse of process claim includes a similar allegation. Filing 1-1 at 6. But a warrant is ordered by a magistrate, and issued by a court clerk—a sheriff's responsibility is to serve and execute the warrant, not to issue it. Neb. Rev. Stat. § 25-2233. And in Nebraska, neither a county court judge nor a county court clerk is an agent of the county: they are state employees. *See*, Neb. Rev. Stat. §§ 24-501, -507, -514, -519. As the County points out, "Douglas County does not have policy-making authority over judges." Filing 4 at 14.

Of course, in some instances, a sheriff's office is involved in the issuance of a warrant—for instance, if a deputy applies for a search warrant. But that was clearly not the case here. In light of the court records, and the basic structure of the Nebraska court system, York's bare allegation that a *County* employee—i.e., a sheriff's office employee—somehow "caused a false warrant to be issued" is not plausible.

(b) Trespass Upon Solitude

Neb. Rev. Stat. § 20-203 provides that "[a]ny person, firm, or corporation that trespasses or intrudes upon any natural person in his or her place of solitude or seclusion, if the intrusion would be highly offensive to a reasonable person, shall be liable for invasion of privacy." York alleges that his automobile was a place of solitude or seclusion and that the sheriff's deputies invaded that privacy when they arrested him. Filing 1-1 at 3.

This claim is insufficient for two reasons. First, the invasion of privacy tort defined by § 20-203 consists solely of an intentional interference with a person's interest in solitude or seclusion, either as to his person or as to his private affairs or concerns, of a kind that would be highly offensive to a reasonable person. *Whipps Land & Cattle Co. v. Level 3 Commc'ns, LLC*, 658 N.W.2d 258, 269 (Neb. 2003). Examples include entering a hospital room and photographing a person suffering from a rare disease, "window peeking" or wiretapping, forging a court order to access a person's bank records, or photographing a person in a tanning booth without consent. *Id.* at 269-70. In other words, there is a distinction between a mere trespass and an intrusion into the private affairs or concerns protected by § 20-203. *Id.* at 270. And what York has alleged—if anything—does not rise above mere trespass.

- 4 -

But second, although styled as a claim for "invasion of privacy" or "trespass," this claim is simply a recasting of York's false imprisonment claim—or, more precisely, it is a claim "arising out of . . . false imprisonment" within the meaning of § 13-910(7). As the Nebraska Supreme Court explained, in the context of the exception for assault and battery claims, "[The exception] does not merely bar claims *for* assault or battery; in sweeping language it excludes any claim *arising out of* assault or battery. We read this provision to cover claims like [the plaintiff's] that sound in negligence but stem from a battery committed by a Government employee." *Britton v. City of Crawford*, 803 N.W.2d 508, 517 (Neb. 2011) (alterations in original) (quoting *United States v. Shearer*, 473 U.S. 52, 105 (1985)). In *Britton*, the plaintiff alleged that a police officer was negligent in his decision to shoot a suspect instead of engaging in negotiation or other nonviolent conflict resolution. *Id.* at 512. The Nebraska Supreme Court concluded the negligence claim was a "semantic recasting of events," reasoning that although the negligence may have caused the battery, without the battery there would have been no claim. *Id.* at 518. Because the "alleged negligence was inextricably linked to a battery," the PSTCA barred the suit. *Id.*

The Court acknowledges that, as a general principle, trespass claims (or invasion of privacy claims) may not be barred by exclusions such as § 13-910(7). *See*, *Raz v. United States*, 343 F.3d 945, 947-48 (8th Cir. 2003); *Metz v. United States*, 788 F.2d 1528, 1535-36 (11th Cir. 1986); *Black v. Sheraton Corp.*, 564 F.2d 531, 539 (D.C. Cir. 1977); *O'Ferrell v. United States*, 968 F. Supp. 1519, 1531 (M.D. Ala. 1997); *see also Johnson*, 700 N.W.2d at 623 (relying on Federal Tort Claims Act for guidance on similar state law). But the only injury York alleges from the intrusion into his automobile is his allegedly wrongful arrest. *See* filing 1-1 at 4. Absent more, this is simply a reframing of his false imprisonment claim and, as such, is barred by § 13-910(7). *See Cambara v. Schlote*, No. 8:14-CV-260, 2015 WL 5775766, at *4-5 (D. Neb. Sept. 30, 2015).

(c) False Light Invasion of Privacy

York alleges that the County invaded his privacy "and placed him before the public in a false light" by "recklessly or knowingly allowing a false warrant to issue" for him and "recklessly arresting [him] on the basis of the false warrant." Filing 1-1 at 5; *see* Neb. Rev. Stat. § 20-204. The Court questions whether York has sufficiently alleged that "the public" was aware, in the slightest, of his arrest. *See Schoneweis v. Dando*, 435 N.W.2d 666, 670 (Neb. 1989). And as noted above, the claim that the County caused the warrant to issue is not plausible. But more importantly, this claim is also barred by § 13-910(7).

- 5 -

To the extent that York has alleged that he was placed in a false light before the public, courts have uniformly held that such claims are barred by exclusions for claims of "libel," "slander," and "misrepresentation." *See*, *Lorenzo v. United States*, 719 F. Supp. 2d 1208, 1212 (S.D. Cal. 2010); *Edmonds v. United States*, 436 F. Supp. 2d 28, 36-37 (D.D.C. 2006); *O'Ferrell*, 968 F. Supp. at 1529-30; *Hobdy v. United States*, 762 F. Supp. 1459, 1462-63 (D. Kan. 1991); *Byrd v. United States*, 668 F. Supp. 1529, 1530 (M.D. Fla. 1987); *Bosco v. Army Corps of Eng'rs*, 611 F. Supp. 449, 452-53 (N.D. Tex. 1985); *cf. Metz*, 788 F.2d at 1535-36. While the tort of false light privacy differs from that of defamation in the nature of the injury asserted, the substance of such a claim involves the communication of false statements, and as such arises out of "libel, slander, [or] misrepresentation." *Hobdy*, 762 F. Supp. at 1462; *see O'Ferrell*, 968 F. Supp. at 1530; *see also Schoneweis*, 435 N.W.2d at 670 ("it is essential to a false light invasion of privacy claim that the publicized matter be false"); *cf. Moats v. Republican Party of Neb.*, 796 N.W.2d 584, 597-98 (Neb. 2011). And, to the extent that York's "false light" claim rests on his allegedly false arrest, it is barred as arising out of false arrest or false imprisonment. *See Cambara*, 2015 WL 5775766, at *4-5.

(d) Negligence

Finally, York alleges that the County negligently failed to verify the validity of the warrant before arresting him. Filing 1-1 at 7-8. But this claim is squarely precluded by *Britton*. York "cannot avoid the reach of the intentional torts exception by framing [his] complaint in terms of negligent failure" to prevent an intentional tort. *Britton*, 803 N.W.2d at 517 (citing *Shearer*, 473 U.S. 52). York's alleged injury arises out of false arrest or false imprisonment, and his claim is barred by § 13-910(7).

2. FEDERAL CONSTITUTIONAL CLAIMS

York's final two claims are claims under 42 U.S.C. § 1983 for alleged violation of the Fourth Amendment and Due Process Clause. Filing 1-1 at 8-10. Specifically, he alleges that his Due Process rights were violated when the County "issued a false warrant" for York and arrested him "on the basis of that warrant." Filing 1-1 at 8. And he alleges that his Fourth Amendment rights were violated when the County "issued a warrant for [York] without probable cause and . . . arrested [York] on the basis of that warrant." Filing 1-1 at 9. For each claim, York alleges that

> [t]he issuance of the defective warrant and the failure to verify the warrant resulted directly from the custom or policy of, Douglas County, The Douglas County Sheriff's Office, and/or

- 6 -

>   Sheriff Timothy F. Dunning. The faulty policies of the aforementioned Defendants includes the mismanagement of warrants, and the failure to properly verify warrants; these policies resulted in Plaintiff's unlawful arrest.

Filing 1-1 at 9-10.

But both claims suffer from the same two defects.[3] First, as explained above, in the absence of some other allegation, it is simply not plausible that the County caused the capias warrant to issue. The county court magistrate and clerk who issued the warrant are not agents of the County.

Second, the only real defendant here is the County, and County liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the County's policymakers. *Szabla v. City of Brooklyn Park, Minnesota*, 486 F.3d 385, 390 (8th Cir. 2007). Where an official policy is itself unconstitutional or directs employees to take unconstitutional action, no evidence beyond a statement of the policy and its exercise is necessary to establish § 1983 liability. *Moyle v. Anderson*, 571 F.3d 814, 818 (8th Cir. 2009). If, however, a policy is constitutional on its face, but it is asserted that a political subdivision should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a "policy" by demonstrating that the inadequacies were a product of deliberate or conscious choice by policymakers. *Szabla*, 486 F.3d at 390.

So, only where a political subdivision's failure to adopt adequate safeguards was the product of deliberate indifference to the constitutional rights of its inhabitants will the municipality be liable for an unconstitutional policy under § 1983. *Id.* Deliberate indifference is a difficult standard to meet. *Spencer v. Knapheide Truck Equip. Co.*, 183 F.3d 902, 906 (8th Cir. 1999). It is possible that a single violation of constitutional rights can trigger liability, where the violation is accompanied by a showing that the political subdivision had failed to train its employees to handle recurring situations presenting an obvious potential for such a violation. *Szabla*, 486 F.3d at 393. But generally, proof of a single incident of unconstitutional activity is not sufficient to impose liability, unless there is also proof that it was caused by an existing, unconstitutional policy. See *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985). If an existing policy is not itself unconstitutional, "considerably more proof than the single incident will be necessary in every

---

[3] The County also asserts that York's claims fail because his injury was *de minimis*. Filing 4 at 28-30. The Court questions whether a night of imprisonment is a *de minimis* intrusion on a citizen's rights. But the Court need not answer that question now.

case to establish both the requisite fault . . . and the causal connection between the 'policy' and the constitutional deprivation." *Id.* at 824.

The problem here is that York has alleged no facts from which it could be inferred that an unconstitutional policy exists, or that the County has been deliberately indifferent to an obvious need to adopt a policy. *See, Szabla,* 486 F.3d at 393; *Zimmerman v. Bellows,* 988 F. Supp. 2d 1026, 1034 (D. Minn. 2013). In the absence of any allegation suggesting that the County has a history of arresting people on cancelled warrants, York has failed to state a claim for County liability on the basis of policy or custom. *See Zimmerman,* 988 F. Supp. 2d at 1034; *see also, Reynolds v. Dormire,* 636 F.3d 976, 981 (8th Cir. 2011); *Spencer,* 183 F.3d at 906.

### 3. LEAVE TO REPLEAD

York asks for leave to amend his complaint, contending that the County has not provided him with the information he would need to plead his claims with more specificity. Filing 7 at 2. The County opposes that request. Filing 8 at 3-6. But the Court cannot foreclose the possibility that York may be able to allege facts establishing the existence of a County policy, or deliberate indifference to the need for a policy, or that York may be able to allege a state law claim if he can more specifically allege how it came to pass that he was arrested on a cancelled warrant. Clearly, someone made a mistake, and if that someone worked for the County, perhaps there is a claim. The Court will permit leave to file an amended complaint. Such complaint, if any, shall be filed on or before August 15, 2016.

### 4. MOTION TO REMAND

York also protectively filed a motion to remand his state-law claims to state court, in the event that the Court determined that his federal claims should be dismissed. Filing 6. Essentially, York has asked the Court to decline supplemental jurisdiction over his state-law claims. *See Carlsbad Tech., Inc. v. HIF Bio, Inc.,* 556 U.S. 635, 639-40 (2009). But having concluded that York should be allowed leave to replead—and, therefore, that the Court will retain jurisdiction for the time being—the Court has addressed his state-law claims. His motion to remand will be denied as moot.

IT IS ORDERED:

1. The County's motion to dismiss (filing 3) is granted.

2. York's motion to remand (filing 6) is denied as moot.

3.  The Clerk of the Court is directed to set an amended complaint deadline of August 15, 2016.

Dated this 25th day of July, 2016.

BY THE COURT:

John M. Gerrard
United States District Judge